# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HORTON; CATHIE L. HORTON,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>CALIFORNIA CREDIT CORP. RETIREMENT PLAN; FORECLOSURE SPECIALISTS, INC.; DOES 1-10,<br><br>　　　　　Defendants. | CASE NO. 09cv274 - IEG - NLS<br><br>Order Granting Preliminary Injunction [Doc. No. 4] |

　　　On February 13, 2009, plaintiffs Michael and Cathie Horton filed a complaint alleging defendants violated the Truth in Lending Act ("TILA") and the California Rosenthal Act. On February 25, 2009, this Court issued a TRO and an Order to Show Cause why it should not issue a preliminary injunction against defendants. (Doc. No. 4.) Defendant California Credit Corp. Retirement Plan ("CCCRP") filed an opposition and the Court heard oral argument on March 11, 2009. Plaintiffs filed a supplemental declaration and CCCRP filed objections. After reviewing the parties' submissions, and for the reasons set forth below, the Court GRANTS the preliminary injunction.

## BACKGROUND

**A.　The Parties**

　　　Plaintiffs Michael and Cathie Horton are the married owners and occupants of 10272 Rancho Carmel Drive, San Diego, California 92128 (the "Horton residence").

Defendant California Credit Corp. Retirement Plan ("CCCRP") does business in California and holds a note secured by the Horton residence. Defendant Foreclosure Specialists, Inc., dba Zenith Trustee Services ("Zenith") is a California corporation which acts as a "trustee" during foreclosure proceedings.

**B.     Factual Background**

On November 10, 2006, CCCRP loaned plaintiffs $70,000, secured by a second deed of trust on the Horton residence. The purpose of the transaction was primarily personal, in that plaintiffs used it to pay homeowner's dues and satisfy a personal judgment. A finance charge applied to the transaction and the transaction carried an interest rate of 12.7%. The current market value of the home is between $400,000 and $550,000.

During the closing of the transaction, plaintiffs received numerous transaction documents. However, plaintiffs allege the notice of right to cancel did not contain the date the cancellation period expired. Plaintiffs submit a copy of the notice of right to cancel they claim to have received. (Michael Horton Decl., Ex. MH-A.) That notice is a preprinted form that does not include the date the cancellation period expired or any signatures.

In September 2008, plaintiffs allege CCCRP lost plaintiffs' payment and refused to accept plaintiffs' replacement tender, which was made within 28 days. CCCRP caused a notice of default to be recorded in the office of the county recorder and initiated foreclosure proceedings.

On November 28, 2008, pursuant to 15 U.S.C. § 1635, plaintiffs attempted to rescind the transaction by mailing the notice required by TILA. Plaintiffs attached a copy of the notice of rescission as Exhibit DLR-A to the Declaration of Deborah L. Raymond. In December 2008, the parties attempted to mediate plaintiffs' claims.

On February 6, 2009, CCCRP caused a Notice of Trustee's sale to be recorded in the office of the County Recorder. The sale of the Horton Residence was scheduled for March 4, 2009.

On February 27, 2009, First American Title Insurance Company ("First American") filed a notice of trustee sale with the San Diego County Recorder's Office. (Rady Decl., Ex. DRR-C.) First American holds the first mortgage in the Horton Residence, secured by a deed of trust. First American's right to the Horton residence is superior to CCCRP's. The First American foreclosure sale

was scheduled to occur on March 19, 2009 at 10:00 a.m.

**C.     Procedural Background**

On February 13, 2009, plaintiffs filed a complaint in the instant action, requesting the Court enjoin defendants from foreclosing during the pendency of the action or otherwise depriving plaintiffs of ownership of the Horton residence.

On February 23, 2009, plaintiffs' attorney contacted Zenith in an attempt to postpone the Trustee's sale. Zenith told plaintiffs' attorney that it would voluntarily postpone the sale if it received a copy of the complaint. Plaintiff emailed Zenith a copy of the complaint, but Zenith declined to postpone the sale. (Raymond Decl., Ex. DLR-C.)

On February 25, 2009, plaintiffs requested a TRO and preliminary injunction. The Court granted the TRO and set the preliminary injunction hearing for March 11, 2009 at 10:30 a.m.

On March 13, 2009 plaintiffs filed a supplemental declaration stating Chase Home Finance LLC ("Chase"), the entity currently servicing the First American mortgage, has stayed the March 19 foreclosure in exchange for a payment plan. Plaintiffs submitted proof that they have already sent the first payment to First American and evidence of the agreement with Chase.

**LEGAL STANDARD**

When pursuing an injunction, all courts agree a plaintiff must show "irreparable injury" and that legal remedies are "inadequate." Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). However, the Ninth Circuit uses two alternative tests to evaluate the propriety of a temporary restraining order or a preliminary injunction. Under the "traditional test," courts implement four factors to evaluate the application:

> (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief.

Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc., 367 F.3d 1108, 1111 (9th Cir. 2004). Alternatively, courts require the movant to "demonstrate either (a) probable success on the merits combined with the possibility of irreparable injury or (b) that she has raised serious questions

1  going to the merits, and that the balance of hardships tips sharply in her favor." Bernhart v. County
2  of Los Angeles, 339 F.3d 920, 925 (9th Cir.2003).  These are not two separate tests, but rather two
3  points on a sliding scale in which the required showing of harm varies inversely with the required
4  showing of meritoriousness. Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813
5  (9th Cir. 2003).  Because a preliminary injunction is an extraordinary remedy, the movant must carry
6  its burden of persuasion by a "clear showing." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

**DISCUSSION**

**A.    Likelihood On the Merits**

In order to obtain a preliminary injunction, plaintiffs must show that they are "likely" to prevail on the merits. Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 665 (2004). This means the plaintiffs "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988).

The parties raise three issues relevant to plaintiffs' ability to succeed on the merits. First, they dispute whether the notice triggered a three-year right of rescission. Second, the parties debate whether plaintiffs are able to show an ability to tender. Third, the parties discuss whether the statute of limitations bars this action. The Court addresses these issues in turn.

*a.    The Notice Triggered a Three-Year Right of Rescission*

i.    Parties' Arguments

Plaintiffs argue CCCRP violated TILA, therefore, they may rescind the transaction for up to three years. According to plaintiffs, TILA requires creditors to provide two notices of the right to cancel, each containing the date the rescission period expires under 15 U.S.C. § 1635; 12 C.F.R. §§ 226.5(a)(1), 226.15(b)(5) ("Reg. Z"). Plaintiffs argue there are two flaws with the form provided by CCCRP: (1) the date the rescission period expired is not contained on the form and (2) the form provides an erroneous definition of a "business day" by failing to exclude Martin Luther King Day. These deficiencies, argue plaintiffs, triggered a three-year rescission period, citing Semar v. Platte Valley Federal Savings & Loan Assocation, 791 F.2d 699, 703-704 (9th Cir. 1986). Plaintiffs claim

they exercised the rescission within three years, therefore, the CCCRP's security interest was void and it cannot proceed with the sale.

CCCRP argues the three-year right of rescission was not triggered because the notice of right to cancel complied with TILA. As proof, CCCRP attaches a right to cancel, which explains the period runs for three business days. Plaintiffs signed an acknowledgment of receipt at the bottom of the notice. CCCRP claims this notice of right to cancel is drafted in accordance with the model notice found in Appendix H-8 of 12 C.F.R. § 226; therefore, CCCRP claims the form is presumptively valid under 15 U.S.C. §§ 1604(b). CCCRP cites the following cases to support its argument: In re Groat, 369 B.R. 413 (B.A.P. 8th Cir. 2007) and Palmer v. Champion Mortgage, 465 F.3d 24 (1st Cir. 2006).

ii.     Analysis

TILA requires that a Notice of Right to Cancel state specifically the last date on which the plaintiffs could rescind the loan agreement without penalty. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(5). TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. 15 U.S.C. § 1635(a). TILA and its regulations, issued by the Federal Reserve System, 12 C.F.R. §§ 226.1- .29 ("Reg Z"), require the lender to provide a form stating the specific date on which the three-day rescission period expires. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(5). If the lending institution omits the expiration date and fails to cure the omission, the borrower may rescind the loan within three years after it was consummated. 15 U.S.C. § 1635(f)

In Semar v. Platte Valley Federal Savings & Loan Ass'n, 781 F.2d 699, 701-05 (9th Cir. 1986), the Ninth Circuit found a loan document triggered the three-year rescission period because it failed to provide the specific date the rescission period ended, even though the notice stated the loan could be rescinded three days after July 16, 1982.

Under Semar, the form at issue in the instant case is deficient, triggering the three-year rescission period. The notice of right to cancel informed plaintiffs they could cancel within three business days of the last of three events: (1) the signing of the Note & Trust Deed; (2) plaintiffs receipt of the TILA disclosures; or (3) plaintiffs receipt of the Notice of Right to Cancel. (Shaw Decl., Ex. SS-A.) However, like the form in Semar, the instant form fails to list a specific date the right to

1  rescind expires.  Therefore, the form technically violates TILA and triggers the three-year rescission
2  period.
3       CCCRP's reliance on In re Groat, 369 B.R. 413 (B.A.P. 8th Cir. 2007), does not change this
4  conclusion.  Groat is inapplicable because the court addressed whether a typographical error in the
5  notice triggered the three-year rescission period.  The court held that the notice did not trigger the
6  three-year rescission period even though it listed the rescission expiration date as September 10, 2001
7  instead of September 10, 2002.  Groat, 368 B.R. at 417.  The court reasoned the 1995 TILA
8  amendments excused creditors from honest mistakes, such as typographical errors.  However, the
9  instant case does not involve a typographical error, but rather an intentional alteration of the form to
10 exclude a date of expiration.
11      Similarly, CCCRP's citation to Palmer v. Champion Mortgage, 465 F.3d 24 (1st Cir. 2006)
12 is inconsequential.  Palmer is inapplicable because the issue before the court was whether a notice was
13 inadequate when it listed an expiration date that occurred prior to debtor's receipt of the notice.  The
14 court concluded the notice did not trigger the three-year rescission period because it was patterned
15 after the Federal Reserve Board's model notice and gave alternative dates the right expired.  The
16 instant case does not involve the same issue and other courts have acknowledged that the First Circuit
17 has expressly broken with the Ninth Circuit on the enforcement of TILA.  See Megitt v. Indymac
18 Bank, F.S.B., 547 F. Supp. 2d 56 (D. Mass. 2008) (declining to follow Semar because the First Circuit
19 has broken with courts which strictly enforce TILA).
20      Further, CCCRP's notice form is not entitled to the presumption of validity under 15 U.S.C.
21 §§ 1604, 1635.  Under section 1604, a creditor is "deemed to be in compliance with the disclosure
22 provisions" if they use a model form and any deletion "does not affect the substance" of the
23 disclosure.  15 U.S.C. § 1604(b).  Under 15 U.S.C. § 1635(h), a creditor is protected from liability if
24 it used a form that "otherwise complied with all other requirements of this section regarding notice."
25
26      In the instant case, CCCRP is not entitled to a presumption of validity because it made material
27 alterations to form H-8 that did not comply with TILA's disclosure provisions.  12 C.F.R. §226, App.
28 H, Form H-8.  CCCRP deleted a line from the form that would have given debtors notice of the date

1  the rescission period expired. This deletion effected "the substance" of the disclosure and, therefore,
2  did not comply with the "requirements of [section 1635]." Accordingly, CCCRP is not protected by
3  either 15 U.S.C. §§ 1604(b) or 1635(h).
4  *b.  Tender of the Loan Proceeds*
5  i.  Parties' Arguments
6  CCCRP claims plaintiffs' TILA claim fails because they cannot tender the funds CCCRP
7  provided during the initial loan transaction. Plaintiffs claim they can tender the loan proceeds.
8  ii.  Analysis
9  The issue is whether plaintiffs need to allege an ability to tender the funds paid by CCCRP.
10 Section 1635(b) governs the rescission-tender sequence "that must be followed unless the court orders
11 otherwise: within twenty days of receiving a notice of rescission, the creditor is to return any money
12 or property and reflect termination of the security interest; when the creditor has met these obligations,
13 the borrower is to tender property." Yamamoto v. Bank of New York, 329 F.3d 1167, 1170 (9th Cir.
14 2003). However, in Yamamoto the Ninth Circuit affirmed a district court's dismissal of an action
15 when debtors admitted an inability to tender. The Yamamoto court held a district court has discretion
16 to alter the rescission-tender chronology. Id.
17 In the instant case, equity weighs against the Court altering the rescission-tender chronology
18 at this stage in the proceedings. At oral argument, plaintiffs raised numerous factors that weigh
19 against altering the chronology: this was a high interest loan; the loan is worth a fraction of the Horton
20 residence; and the plaintiffs only missed one payment. Given these factors, at this stage of the
21 proceedings, it is unnecessary for plaintiffs to demonstrate a present ability to tender.
22 *c.  Statute of Limitations*
23 The statute of limitations does not bar plaintiffs' claims. To exercise the right to rescind, a
24 borrower must "notify the creditor of the rescission by mail, telegram or other means of written
25 communication." 12 C.F.R. § 226.23(a)(2). Notice is effective "when mailed, when filed for
26 telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place
27 of business." Id. If a creditor then refuses to cancel the loan, the borrower has one year from the
28 refusal to file suit for damages pursuant to 15 U.S.C. § 1640(e). Miguel v. Country Funding Corp.,

1  309 F.3d 1161, 1165 (9th Cir. 2002). Plaintiffs requested rescission on November 28, 2008, less than
2  one year ago, therefore the claim is not time barred.

**B.  Irreparable Injury**

i.  Parties' Arguments

Plaintiffs cite a litany of cases in which a court found the loss of a primary residence constituted irreparable harm. Further, plaintiffs contend allowing foreclosure could irreparably damage their TILA rights. Plaintiffs note it is unclear whether the right to rescind would be extinguished by the foreclosure sale, citing 12 C.F.R. 226.23(a)(3); Reg. Z., *Official Staff Commentary*, 226.23(a)(3) ("A sale or transfer of the property need not be voluntary to terminate the right to rescind.").

ii.  Analysis

A preliminary injunction "may only be granted when the moving party has demonstrated a significant threat of irreparable injury." Simula, Inc v. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. " Sampson v. Murray, 415 U.S. 61, 90 (1974). Establishing a risk of future harm is insufficient, the harm must be imminent. Caribbean Marine Serv. Co., Inc. v. Baldridge, 844 F.2d 688, 674 (9th Cir. 1988). Even if plaintiffs establish success on the merits, "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Siegel v. Le Pore, 234 F.3d 1163, 1176 (11th Cir. 2000).

A loss of a primary residence is irreparable harm. See Avila v. Stearns Lending, Inc., 2008 WL 1378231, at *3 (C.D. Cal. April 7, 2008); Nichols v. Deutsche Bank Nat. Trust Co., 2007 WL 4181111, at *2 (S.D. Cal. Nov. 21, 2007); Wrobel v. S.L. Pope & Assocs., 2007 WL 2345036, at *1 (S.D. Cal. June 15, 2007). Because the Horton residence is plaintiffs' primary residence, plaintiffs have shown irreparable injury.

**C.  Balance of Hardships**

i.  Parties' Arguments

Plaintiffs argue the balance of hardships favors injunction. If the injunction is not issued,

1  plaintiffs could lose their home regardless of the outcome of the lawsuit.  If the injunction is issued,
2  but defendants are victorious, they must merely wait until the conclusion of the action to foreclose.
3  Plaintiffs argue even if defendants ultimately win, they will have lost nothing.  Plaintiff Michael
4  Horton submitted a supplemental declaration, in which he asserts First American, through its loan
5  service company Chase, has voluntarily stayed the March 19, 2009 sale as part of a payment plan.
6       CCCRP claims it will suffer significant harm from the injunction.  CCCRP is the holder of a
7  second deed of trust.  The company asserts plaintiffs have defaulted on the First American mortgage,
8  which carries a balance of $290,647.93.  The trustee sale by the holder of the first trust deed would
9  have taken place on March 19, 2009 at 10:00 a.m.  Because the holder of the first deed of trust has
10 seniority, CCCRP is concerned its security interest is in jeopardy.
11 ii.     Analysis
12      Before an injunction may issue, the court must identify the hardship an injunction may cause
13 the defendant and weigh it against the threatened harm to the plaintiff.  "[T]he real issue in this regard
14 is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is
15 *improperly* granted or denied."  Scotts Co. v. United Industries Corp., 315 F.3d 264, 284 (4th Cir.
16 2002).
17      The balance of hardships tips toward plaintiffs.  CCCRP will not suffer harm to its secured
18 status because the First American foreclosure sale has been voluntarily stayed.  Therefore, even if the
19 injunction is improperly issued, CCCRP will retain its secured status and will be able to foreclose if
20 victorious on the merits.  It is churlish to suggest the delayed payment of a debt outweighs loss of the
21 family home.  Accordingly, the Court finds the balance of hardships weighs in favor of plaintiffs.
22 **D.     Public Interest**
23 i.      Parties' Arguments
24      Plaintiffs argue public interest weighs in favor of enjoining defendants.  According to
25 plaintiffs, allowing a creditor to go forward with a foreclosure proceeding despite possible TILA
26 violations would frustrate Congress's purpose.
27      CCCRP appeals to the state of the economy and the influx of mortgages cases to argue the
28 public interest favors foreclosure.

### ii. Analysis

The economy aside, the public interest still favors keeping families in their homes until they have been heard on the merits. Certainly, defendants do not contend the public interest favors wrongful eviction over delay in loan repayment.

### E. Additional Security

In order to obtain a preliminary injunction, plaintiffs must post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Accordingly, the Court orders CCCRP's security interest remain on the property for the duration of this injunction as security. No additional security is necessary.

### CONCLUSION

For the foregoing reasons, DURING THE PENDENCY OF THIS ACTION, Defendants, defendants' agents, assigns, employees, officers, attorneys, and representatives and those in active concert or participation with defendants or them ARE HEREBY RESTRAINED AND ENJOINED from engaging in or performing any act to deprive Plaintiffs of ownership and/or possession of the real property located at 10272 RANCHO CARMEL DRIVE, SAN DIEGO, CALIFORNIA 92128 (hereinafter the "Property"), including but not limited to instituting, prosecuting, or maintaining foreclosure or sale proceedings on the Property, from recording any deeds or mortgages regarding the Property or from otherwise taking any steps whatsoever to deprive Plaintiffs of ownership and/or possession in the Property, and in particular from proceeding with the sale of the Property.

IT IS SO ORDERED.

DATED: March 16, 2009

IRMA E. GONZALEZ, Chief Judge
United States District Court