1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | MICHAEL HORTON; CATHIE L. HORTON,

12 |                Plaintiff,

13 |     vs.

14

15

16 | CALIFORNIA CREDIT CORP. RETIREMENT PLAN; FORECLOSURE SPECIALISTS, INC., dba ZENITH TRUSTEE SERVICES, a California Corporation; DOES 1-10,,

17

18

19 |                Defendant.

CASE NO. 09-cv274 - IEG - NLS

**ORDER:**

**(1) DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION (Doc. No. 21); and**

**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT (Doc. No. 20.)**

20       Presently before the Court are Defendant California Credit Corp. Retirement Plan's

21 ("CCCRP" or "Defendant") motions to compel arbitration or alternatively to dismiss the complaint

22 pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs Michael and Cathie Horton ("Plaintiffs") have filed

23 oppositions to both motions, and Defendant has filed reply briefs in support of both motions.  The

24 Court finds the motions suitable for disposition without oral argument pursuant to Local Civil Rule

25 7.1(d)(1).  Having considered the parties' arguments, the Court denies the motion to compel

26 arbitration, and grants the motion to dismiss in part.

27 ///

28 ///

# BACKGROUND

Plaintiffs are the married owners and occupants of 10272 Rancho Carmel Drive, San Diego, California 92128 ("the Horton Residence" or "the Property").   Defendant CCCRP does business in California and holds a note ("the note") secured by the Horton residence.  Defendant Foreclosure Specialists, Inc., dba Zenith Trustee Services ("Zenith") is a California corporation which acts as a trustee during foreclosure proceedings.

On November 10, 2006, Defendant loaned Plaintiffs $70,000, secured by a second deed of trust on the Property.  A finance charge applied to the transaction and the transaction carried an interest rate of 12.7%.

During the closing of the transaction, Plaintiffs received and signed numerous transaction documents, including an Alternative Dispute Resolution Agreement (the "Agreement").  Defendant did not sign the Agreement.  The Agreement stated, *inter alia*:

> "ARBITRATION OF DISPUTES: CALIFORNIA CREDIT CORP RETIREMENT PLAN ("LENDER"), and Michael W Horton [and Cathie L Horton], ("Borrower") hereby further agree that any dispute or claim in Law or Equity arising between them out of the above referenced loan, that is not settled through mediation, shall be decided by neutral, binding arbitration under the rules of the American Arbitration Association.  The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless the parties mutually agree to a different arbitrator, who shall render a written decision in accordance with the California Code of Civil Procedure, Judgment upon the award of the arbitrator may be entered in any court having jurisdiction.  The parties shall have the right to discover in accordance with California Code of Civil Procedure §1283.05.  The prevailing party shall be entitled to recover their attorneys fees and all costs.  However, prior to the decision of the arbitrator, each party shall be responsible for the payment of an equal share of the cost of arbitration.  It is expressly provided, however, that neither the obligation to Mediate or to Arbitrate shall apply to the Lender's right to foreclose under the deed of trust securing the above referenced loan in the event of a default by Borrower.
>
> NOTICE: BY SIGNING BELOW, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BY A JURY TRIAL, BY SIGNING BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE

"ARBITRATION OF DISPUTES" PROVISION.  IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.   YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

[Ex. A to Rady Decl. ISO Motion to Compel Arbitration ("Rady Decl.")]

Plaintiffs allege that in September, 2008 Defendant lost their payment and refused to accept a replacement tender, which Plaintiffs made within twenty-eight days.  Defendant caused a notice of default to be recorded in the office of the county recorder and initiated foreclosure proceedings.  On November 28, 2008, pursuant to 15 U.S.C. § 1635, Plaintiffs attempted to rescind the transaction by mailing the notice required by TILA.  (Ex. B to Compl.)  On February 6, 2009, Defendant caused a notice of Trustee's Sale to be recorded in the office of the County Recorder.  The sale of the Horton Residence was scheduled for March 4, 2009.

On February 13, 2009, Plaintiffs filed a complaint in this Court, alleging, *inter alia,* violations of the federal Truth in Lending Act ("TILA") and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA,").  Shortly thereafter Plaintiffs sought a temporary restraining order ("TRO") and a preliminary injunction to stay the foreclosure proceedings.  The Court granted a TRO on March 16, 2009, and granted the preliminary injunction on March 16, 2009.  Defendant now seeks to compel arbitration pursuant to the Agreement or alternatively to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

I.      Defendant's Motion to Compel Arbitration

   A.      Applicable Law

The parties both invoke the Federal Arbitration Act ("FAA") in their moving papers.  The FAA governs the enforceability of arbitration agreements in contracts involving interstate commerce.[1]  See 9 U.S.C. § 1 (2009).  Section 2 of the FAA provides,

---

[1] The Court notes that the parties do not dispute the agreement involves interstate commerce even though all parties to the agreement reside in California, nor do the parties address the choice of law provision within the Agreement itself, which provides "NOTICE: By signing below, you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration as provided by California Law . . . .  If you refuse to submit

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2009).  The FAA represents a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  Plaintiffs take issue with whether grounds exist "at law or in equity for the revocation of [the Agreement]."

"In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'"  Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (citation omitted).  Although a court evaluating the enforceability of an arbitration agreement may not invalidate the agreement under state laws applicable only to arbitration provisions, "general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate [such] agreements."  Id. at 892.  In the absence of a generally applicable state law rendering an arbitration agreement invalid, "a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms."  Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991).

B.      Analysis

Plaintiffs argue the Agreement is unenforceable because it is unconscionable, or alternatively, illusory.  Because the unconscionability inquiry is dispositive, the Court does not reach Plaintiffs' alternative argument.

---

to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the California Code of Civil Procedure." (Ex. A to Rady Decl.)  Nevertheless, the parties' arguments extend only to contract defenses which for the purposes of this discussion are the same regardless of whether the FAA or California law is applied.  See, e.g. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83,  (Cal. 2000) ("[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.") (citations omitted).  The Court accordingly does not reach the issue of whether the Agreement involves interstate commerce for purposes of the FAA.

California law places the burden of proving unconscionability on the party challenging the validity of the arbitration clause. Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1099 (Cal. Ct. App. 2002). Under California law, an arbitration agreement must be both procedurally and substantively unconscionable to be invalid. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (Cal. 2000). Procedural unconscionability exists when there is oppression or surprise in an agreement because of unequal bargaining power. Id. The substantive unconscionability inquiry turns on whether contract terms are unduly harsh or oppressive. Id. Although both substantive and procedural unconscionability are required to render an agreement unenforceable, they need not be present in the same degree because California courts implement a "sliding scale" analysis. Id. Under this analysis, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

### 1.   Procedural Unconscionability

The procedural unconscionability inquiry centers on the equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms. Adams, 279 F.3d at 892 (citing Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (Cal. Ct. App. 1997)). More specifically, courts consider the factors of "oppression" and "surprise" when evaluating the procedural unconscionability of a contract. Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101, 1106 (9th Cir. 2003). Oppression arises "from an inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice." Id. (citing Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (Cal. Ct. App. 1997)). Surprise is defined as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Id. (citing Stirlen, 51 Cal. App. 4th at 1532).

As a threshold matter, unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion." Armendariz, 24 Cal. 4th at 113. A contract of adhesion is defined as "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (Cal. Ct. App. 2001). When a party to an agreement who is in a relatively weaker bargaining position "is

1  presented the clause and told to 'take it or leave it' without the opportunity for meaningful

2  negotiation, oppression, and therefore procedural unconscionability, are present." Szetela, 97 Cal.

3  App. 4th at 100.

4      Here, Defendant does not dispute that the Agreement is a standard form contract drafted by

5  CCCRP, that CCCRP had superior bargaining power, and that CCCRP presented the clause to

6  Plaintiffs on a  "take-it-or-leave-it" basis without the opportunity for meaningful negotiation.

7  (Opp. at 4; Reply at 2-3.)  Defendant in fact concedes the Agreement is procedurally

8  unconscionable, but argues the circumstances surrounding the Agreement's formation have

9  established only "a minimal degree of procedural unconscionability." (Reply at 2-3.)

10      The Court agrees the Agreement is only minimally procedurally unconscionable.

11  Plaintiffs' sole basis for their procedural unconscionability argument is that the Agreement is

12  adhesive.  This, in itself establishes only a minimal degree of procedural unconscionability.  See

13  Gatton v. T-Mobile USA, Inc., 152 Cal. App. 4th 571, 583 (Cal. Ct. App. 2007) ("[A]bsent

14  unusual circumstances, use of a contract of adhesion establishes a minimal degree of procedural

15  unconscionability notwithstanding the availability of market alternatives.")  Moreover, Plaintiffs

16  have not shown  "surprise" in the formation of the Agreement.  Because only a minimal degree of

17  procedural unconscionability exists, the Agreement is enforceable under California's "sliding

18  scale" inquiry  unless it contains a sufficiently high degree of substantive unconscionability.

19          2.      Substantive Unconscionability

20      Plaintiffs argue the provisions excepting Defendant's foreclosure remedy from the

21  arbitration requirement and providing the parties split arbitration costs render the Agreement

22  substantively unconscionable.[2]  The Court agrees, and finds that, for the reasons set forth below,

23  there exists a degree of substantial unconscionability substantial enough to render the Agreement

24  unenforceable under California's "sliding scale" analysis.

25

26      [2]  Plaintiffs also object to the provision that the  "prevailing party shall be entitled to recover
    their attorney's fees and all costs." (Ex. A to Rady Decl.)  Plaintiffs argue this provision contravenes
27  the fee-shifting provisions of TILA and the RFDCPA because it "allows CCCRP to recover attorney's
    fees as a prevailing party, without a determination that the claims were brought in bad faith."  (Opp.
28  at 7.)  However, Plaintiffs offer no legal support for this contention and the Court does not consider
    it for the purposes of this analysis.

a.      Reservation of Foreclosure Remedy

i)      Plaintiffs' Arguments

Plaintiffs primarily object to the Agreement's provision that "any dispute or claim in Law or Equity" between the parties must be submitted to binding arbitration, with the explicit exception that "neither the obligation to Mediate or to Arbitrate shall apply to the Lender's right to foreclose under the deed of trust securing the above referenced loan in the event of a default by Borrower." (Opp. at 5; Ex. A to Rady Decl.)  Plaintiffs contend that "[p]ractically applied, every claim or action likely to be brought by a borrower against CCCRP shall be subject to mandatory binding arbitration, while all claims or actions likely to be brought by CCCRP, i.e. foreclosure, shall not be subject to binding arbitration."  (Opp. at 5.)

Plaintiffs rely on Armendariz, in which the Supreme Court of California held, that arbitration agreements must contain a "modicum of bilaterality," and that "[a]lthough parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself."  Armendariz, 24 Cal. 4th at 117-18.

Plaintiffs also cite Flores v. Transamerica Homefirst, in which the California Court of Appeal held substantively unconscionable an arbitration clause that required all claims arising from a loan agreement to be submitted to binding arbitration, but excepted from this requirement, "an action or proceeding to foreclose on the Property pursuant to the Security Instrument."  Flores v. Transamerica Homefirst, 93 Cal. App. 4th 846, 849 (Cal. App. 1st Dist. 2001).  Although the arbitration clause in Flores was more one-sided than the instant clause because it also explicitly excepted the lender's rights to judicial "self-help" remedies such as "set-off, or obtain[ing] injunctive relief for the appointment of a receiver,"  Id. at 850, the court notably reasoned that "[a]s a practical matter, by reserving to itself the remedy of foreclosure, [the lender] has assured the availability of the only remedy it is likely to need."  Id. at 855.

Similarly, in ACORN v. Household Int'l, Inc., another case upon which Plaintiffs rely, the district court applying the FAA found unconscionable an arbitration clause providing that any

claim arising from the agreement would be submitted to arbitration at the election of either the

borrower or the lender, but excepting the lenders' right to foreclose upon any property involved in

any claim subject to the loan documents.  ACORN v. Household Int'l, Inc., 211 F. Supp. 2d 1160,

1173 (N.D. Cal. 2002).  The court accepted the plaintiff borrowers' interpretation of the clause as

"provid[ing] an exception to the arbitration agreement with respect to the only remedy Defendants

are likely to seek in a dispute with a borrower: a foreclosure."  Id.  In denying the defendant

lenders' motion to compel arbitration, the ACORN court also reasoned that the exclusion of the

foreclosure remedy from the scope of the arbitration agreement "add[ed] to the one-sidedness and

substantive unconscionability of the agreement" and "weigh[ed] in favor of finding the arbitration

agreement substantively unconscionable."  Id.

ii)      Defendant's Arguments

Defendant argues a contractual term is substantively unconscionable "only if it so 'shock[s]

the conscience,' that a person would have to be "under delusion" would agree to it," citing

respectively to Belton v. Comcast Cable Holdings, LLC, 60 Cal. Rptr. 3d 631, 651 (Cal. Ct. App.

2007) and Herbert v. Lankershim, 71 P.2d 220, 257 (Cal. 1937) (Reply at 3.)  These cases are

inapposite because while they both articulate general doctrinal concepts of unconscionability,

neither case evaluates the unconscionability of an adhesive arbitration provision.

Defendant also relies on Gray v. Conseco, Inc., 2000 U.S. Dist. LEXIS 14821 (C.D. Cal.

Sept. 29, 2000).  In that case, the plaintiff borrowers opposed the defendant lenders' motion to

compel arbitration, arguing the arbitration clause in each of their promissory notes was

unconscionable.  The arbitration clause allowed the defendants to "retain the right to bring a

lawsuit in court for many types of claims arising out of the loan, while Plaintiffs must arbitrate any

and all claims."  Gray, 2000 U.S. Dist. LEXIS at *14.   The Gray court acknowledged the

California Supreme Court's holding in Armendariz that a one-sided arbitration clause is

unconscionable unless there is a valid business justification for the one-sidedness of the clause, but

contrasted the holdings of  "[c]ourts in other jurisdictions [which] have considered Defendants'

arbitration clause or similar ones and upheld them in the face of unconscionability attacks.

Specifically, several courts have held that the lack of mutuality arising from the fact that

1   Defendants may go to court while Plaintiffs must arbitrate does not render the clause

2   unconscionable." Gray, 2000 U.S. Dist. LEXIS at *13.  The Gray court ultimately rejected

3   Armendariz, out of deference to the federal policy favoring arbitration, because it concluded

4   Armendariz singled out and imposed a special burden on arbitration agreements.  Id. at *15.

5                               iii)       Analysis

6          Here,  Defendant argues the Court should follow Gray and decline to find the arbitration

7   clause unconscionable out of deference to the federal policy favoring arbitration.  Indeed, in

8   Doctor's Associates v. Casarotto the Supreme Court held that "generally applicable contract

9   defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration

10  agreements without contravening [the FAA]," but that "courts may not . . . invalidate arbitration

11  agreements under state laws applicable *only* to arbitration provisions."  Doctor's Assocs. v.

12  Casarotto, 517 U.S. 681, 687 (1996).  However, subsequent to Gray, the Ninth Circuit held that

13  under Doctor's Associates, state law adhesion contract principles may be invoked to bar the

14  arbitrability of disputes under the FAA.  Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 941-42

15  (9th Cir. 2001).[3]  As such, the Court finds the reasoning in Armendariz,  Flores and ACORN

16  persuasive.  Like the arbitration agreements in Flores and ACORN, the Agreement requires

17  Plaintiffs to arbitrate all disputes, while Defendant's foreclosure remedy is excepted from this

18  requirement.  Defendant, as the stronger party has therefore imposed the arbitration forum on

19  Plaintiffs, without accepting that forum with respect to foreclosure, which is the only remedy

20  Defendant is likely to need.  The provision, therefore, does not provide a "modicum of bilaterality"

21  and is substantively unconscionable under general principles of California contract law.[4]

---

23          [3] Moreover, the Supreme Court of California reasoned in Armendariz that California law's
     enforcement of  "a modicum of bilaterality" in arbitration agreements does not single arbitration out
24   for  suspect  status  under  Doctor's  Associates,  and  held  that  "ordinary  contract  principles  of
     unconscionability may manifest themselves in forms peculiar to the arbitration context."  Armendariz,
25   24 Cal. 4th at 119.

26          [4]Although the Armendariz court held that not all lack of mutuality in an adhesive arbitration
     agreement is unconscionable, so long as the party with superior bargaining strength "has a legitimate
27   commercial need," the "business realities" that create the special need must be explained in the
     contract itself or factually established.  Armendariz, 24 Cal. 4th at 117; see also Flores, 93 Cal. App.
28   4th at 855 (finding a lender seeking to enforce a one-sided arbitration provision has not established
     a legitimate commercial need to justify the one-sidedness.)  Here, Defendant has not availed itself of
     the argument that the one-sidedness of the arbitration provision is justified by a legitimate commercial

b.      Cost-Splitting Provision

The Agreement provides that "prior to the decision of the arbitrator, each party shall be responsible for the payment of an equal share of the cost of arbitration." (Ex. A to Rady Decl.) Plaintiffs argue this provision is substantively unconscionable because it burdens them with the requirement to pay an equal share of up-front arbitration costs in order to pursue their claims, and these costs are much higher than the district court's fees.

The Ninth Circuit, in interpreting California law, has held fee-splitting provisions in arbitration agreements to be substantively unconscionable. In Circuit City Stores v. Adams, the Ninth Circuit held that a fee splitting provision, alone, in an arbitration agreement between an employee and employer, "would render an arbitration agreement unenforceable." 279 F.3d 889, 892 (9th Cir. 2002). In Ting v. AT&T, the Ninth Circuit affirmed the district court's finding that a fee-splitting provision in an arbitration clause between a telecommunications company and its residential customers is unconscionable because "some complainants would hypothetically face prohibitive arbitration costs, effectively deterring them from vindicating their statutory rights." 319 F.3d 1126, 1151 (9th Cir. 2003). See also ACORN, 211 F. Supp. 2d at 1173 (finding a cost-splitting provision between a lender and a borrower to be unconscionable, and relying on Adams, the district court decision in Ting, and the Armendariz holding that "the party imposing arbitration may not impose any type of cost not incident to judicial action.")

Defendant argues the cost-splitting provision is not unconscionable because Plaintiffs' assertion of prohibitive fees is too speculative, relying on Green Tree Fin. Corporation-Alabama v. Randolph, 531 U.S. 79 (2000). However, the Agreement's fee-splitting provision here is explicit, whereas the arbitration agreement in Green Tree was silent as to the allocation of fees. Therefore, the Court rejects Defendant's argument.[5]  Defendant also argues the cost-splitting provision is not unconscionable under California law, relying on Nagrampa v. MailCoups, Inc., 469 F.3d 1257 (9th

_____

need, nor does the Agreement itself explain the business realities that might underlie such a need.

[5]  In holding fee-splitting provision to be unconscionable in Adams, the Ninth Circuit reasoned it could not find the issue of fees too speculative as the Supreme Court did in Green Tree, because the fee-splitting provision at issue explicitly provided that as a default rule that the parties would share arbitration cost, "whereas the arbitration agreement[] in . . . [Green Tree] [was] silent as to the allocation of fees[.]" Adams, 279 F.3d at 895 n. 5.

Cir. 2006) (en banc).  However, in <u>Nagrampa</u> the appellant merely argued the arbitration provision at issue was unconscionable because it contained a fee-splitting provision, and the Ninth Circuit held that fee-splitting provisions are not "per se substantively unconscionable under California law."  <u>Nagrampa</u>, 469 F.3d at 1285.  Here, Plaintiffs do not argue the cost-splitting provision is per se unconscionable; they instead argue the provision "could chill [their] ability to pursue their claims and protect their rights under federal and state law."  (Opp. at 8.)

In this case, the gravamen of Plaintiffs' complaint is statutory claim: whether they have the right to rescind their loan transaction under TILA, 15 U.S.C. § 1635.  In <u>Ting</u>, the Ninth Circuit held, "parties that agree to arbitrate statutory claims still are entitled to basic procedural and remedial protections so that they can effectively realize their statutory rights. . . .  Among these protections is the assurance that an individual need not 'pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'"  <u>Ting</u>, 319 F.3d at 1126.  Here, the cost-splitting agreement imposes arbitrator's fees on Plaintiffs as a condition of access to the arbitration forum where Plaintiffs would pursue their TILA claims.  As such, the Court finds the provision substantively unconscionable under <u>Ting</u>.

## II.     **Defendant's Motion to Dismiss the Complaint For Failure to State a Claim**

The complaint contains claims for: (1) various relief under TILA; (2) violation of the RFDCPA, California Civil Code § 1788 *et seq.*; (3) quiet title; (4) an accounting pursuant to 15 U.S.C. § 1635(b) and 12 U.S.C. § 2605; and (5) declaratory relief.  Defendant moves to dismiss the Complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, the Court grants the motion in part and denies it in part.

### A.     <u>Legal Standard</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); <u>Navarro v. Block</u>, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  <u>Cahill v. Liberty</u>

Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  To a void a Rule 12(b)(6) dismissal, a

complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state

a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  Id. at 555 (citation omitted).  In spite of the deference the court is bound to

pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can

prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in

ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council

of Carpenters, 459 U.S. 519, 526 (1983).

    In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider

only allegations contained in the pleadings, exhibits attached to the complaint, and matters

properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  If a

complaint fails to state a claim, the court should grant leave to amend unless it determines that the

pleading could not possibly be cured by the allegation of other facts.  Doe v. United States, 58

F.3d 494, 497 (9th Cir. 1995).  Leave to amend, however, may be denied where a complaint

previously has been amended, or where amendment would be futile.  Allen v. City of Beverly

Hills, 911 F.2d 367, 373 (9th Cir. 1990).

    **B.**    Analysis

        **1.**    TILA Rescission Claim

    Plaintiffs seek to rescind their loan under TILA, 15 U.S.C. § 1635, and Regulation Z, 12

C.F.R. § 226.15 ("Reg Z").  TILA provides for the following procedural chronology for rescission

of a loan:

> Within 20 days after receipt of a notice of rescission, the creditor
> shall return to the obligor any money or property given as earnest
> money, downpayment, or otherwise, and shall take any action
> necessary or appropriate to reflect the termination of any security
> interest created under the transaction. If the creditor has delivered
> any property to the obligor, the obligor may retain possession of it.
> Upon the performance of the creditor's obligations under this
> section, the obligor shall tender the property to the creditor, except
> that if return of the property in kind would be impracticable or
> inequitable, the obligor shall tender its reasonable value. Tender

1

> shall be made at the location of the property or at the residence of
> the obligor, at the option of the obligor. If the creditor does not take
> possession of the property within 20 days after tender by the obligor,
> ownership of the property vests in the obligor without obligation on
> his part to pay for it. The procedures prescribed by this subsection
> shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b) (2009).

Defendant argues Plaintiffs' rescission claim fails because they have not alleged their ability to tender the funds borrowed.  Plaintiffs respond that the plain language of § 1635(d) provides that a consumer's obligation to tender is not triggered until the creditor first performs its obligations under § 1635(d)(2).

The Ninth Circuit has not established whether a plaintiff seeking rescission of a loan under TILA must allege at the pleading stage the ability to tender the proceeds of a loan.  Although Defendant relies on La Grone v. Johnson, in that case the Ninth Circuit reversed a grant of summary judgment in favor of a borrower, holding that the district court should have conditioned rescission of the loan upon the borrower's ability to tender the amounts advanced by the lenders. La Grone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976).  In another case Defendant cites, Yamamoto v. Bank of New York, the Ninth Circuit similarly affirmed a district court's grant of summary judgment in favor of a creditor, when the borrowers admitted an inability to tender. Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1169 (9th Cir. 2003).

In fact, it is the Ninth Circuit's position that "whether a decree of rescission should be condition[ed upon the borrower's tender] depends upon 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act.'"  Yamamoto, 329 F.3d at 1171 (citation omitted).  The Court declines to engage in such an inquiry at this stage of the litigation and accordingly declines to alter the rescission-tender chronology set out in 15 U.S.C. § 1635(d).  The Court therefore denies Defendant's motion to dismiss Plaintiffs' TILA rescission claim.

   2.   TILA Damages Claim

Plaintiffs allege that "[a]s a result of the failure of defendant CCCRP to comply with the disclosure requirements and the rescission provisions of the TILA and Reg. Z, [they] are entitled to

statutory damages up to $4,000.00, actual damages in an amount to be determined at trial; and costs and Reasonable attorney's fees." (Compl. at 8.)  Defendant argues Plaintiffs' damages claims are barred by TILA's one-year statute of limitations.

TILA provides for private causes of action for monetary damages, pursuant to 15 U.S.C. § 1640(a).  Section 1640 also establishes a limitations period on damages claims, providing that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e) (2009).  When a TILA violation is based on an insufficient disclosure, the limitations period generally "starts at the consummation of the [loan] transaction."  King v. California, 784 F.2d 910, 915 (9th Cir. 1986); see also Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996) (holding that when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit).  However, when a lender has refused to rescind a loan in violation of TILA, a borrower has one year from the date of a lender's *refusal to rescind* to file suit for damages arising from that violation.  Miguel v. Country Funding Corp, 309 F.3d 1161, 1164 (9th Cir. 2002); see also 15 U.S.C. § 1635(g) (2009) (TILA's "Right of Rescission" section, providing, "[i]n any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.")

Here, notwithstanding Plaintiffs' argument that their TILA damages claims arise solely from Defendant's failure to respond to their rescission request  (Opp. at 6-7,) the complaint's TILA damages claim explicitly references Defendant's failure to comply with TILA's "disclosure requirements" as well as its "rescission provisions."  Plaintiffs signed their promissory note on November 10, 2006, and brought the instant action over two years later, on February 13, 2009. Plaintiffs' damages claim is therefore barred by the statute of limitations to the extent it is based on alleged violations resulting from insufficient disclosures at the time of consummation of the loan.

However, Plaintiffs also allege they are entitled to damages because Defendant failed to respond to their rescission notice of November 28, 2008.  Plaintiffs' notice of rescission was timely if, as they allege, Defendant did not provide required transaction documents, including

required copies of the notice of right to cancel containing the date of expiration of the cancellation period.[6]  Because Defendant's refusal to rescind the loan following Plaintiffs' request occurred less than a year before Plaintiffs filed their claim for TILA damages, their claim for this violation is not time-barred.  Accord Rowland v. Novus Fin. Corp., 949 F. Supp. 1447, 1455 (D. Haw. 1996).

### 3.    TILA Recoupment Claim

As discussed *supra*, Plaintiffs' claims for TILA damages based on violations that occurred at the consummation of the loan are time-barred.  However, the TILA statute of limitations excepts damages claims asserted "as a matter of defense by recoupment or set-off."  15 U.S.C. § 1640(e) (2009).  Plaintiffs allege they are "entitled to seek recoupment or set-off of any damages, actual and statutory, based on violations that occurred at the consummation of the transaction[.]" (Compl. at 7.)  Defendant argues Plaintiffs' recoupment claim is an attempt to circumvent TILA's one-year limitations period for damages claims.  (Reply at 4.)

As a general rule, "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." Bull v. United States, 295 U.S. 247, 262 (1935).  The Supreme Court has specifically confirmed that recoupment claims survive TILA's statute of limitations.  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 418 (1998) (citation omitted).  Section 1640(e) of TILA makes recoupment available only as a "defense" in an "action to collect a debt."  To withstand Defendant's motion to dismiss the recoupment claim, Plaintiffs must show that "(1) the TILA violation and the debt are products of the same transaction, (2) the debtor asserts the claim as a defense, and (3) the main action is timely." Moor v. Travelers Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986) (citing In re Smith, 737 F.2d 1549, 1553 (11th Cir. 1984)).

Defendant argues Plaintiffs' recoupment claim fails because they have not asserted the claim as a defense.  In support, it relies on In re Smith and Basham v. Finance America Corp., 583 F.2d 918 (7th Cir. 1978). In Smith and Basham the Eleventh and Seventh Circuits respectively examined the issue of whether a debtor who has filed for Chapter 13 bankruptcy may respond to

---

[6] While a debtor normally has three days to rescind a loan transaction after it has been consummated, the debtor has up to three years to rescind the transaction if the required notice or material disclosures are not delivered.  See 15 U.S.C. § 1635(f) (2009); 12 C.F.R. 226.23 (2009).

1   the filing of a claim by a creditor by alleging an otherwise time-barred TILA violation on a

2   recoupment theory.  Both courts determined the recoupment claims failed because they were not

3   defensive: the debtors sought affirmative damages under TILA as opposed to claiming they were

4   actually damaged by the TILA violations or that the TILA violations, negated the validity of the

5   underlying loan transaction.  The <u>Smith</u> court additionally noted that because the plaintiff's claim

6   was "not asserted as a defense to or the denial of the creditor's claim, it [could] not be classified as

7   a recoupment." <u>Smith</u>, 737 F.2d at 1554.

8        Here, the facts are different than in <u>Smith</u> and <u>Basham</u>. While in those cases the plaintiffs

9   filed counterclaims to their creditors' bankruptcy claims, Plaintiffs here allege recoupment as a

10  defense to Defendant's foreclosure proceeding.  (Compl. at 7.)  Nevertheless, Plaintiffs still do not

11  successfully assert a recoupment claim as a defense in an action to collect a debt.[7]  Although the

12  Ninth Circuit has not reached the issue of whether a foreclosure sale properly constitutes an

13  "action" for purposes of a defensive recoupment claim under TILA, a recent district court case has

14  addressed the issue.  The Court finds the reasoning in <u>Ortiz v. Accredited Home Lenders, Inc.</u>[8] to

15  be persuasive.

16       In <u>Ortiz</u>, the plaintiffs' claims for damages under TILA were time barred, but they argued

17  they could make a claim for recoupment because the claim arose in response to their creditor's

18  initiation of a non-judicial foreclosure sale.  The <u>Ortiz</u> court noted that § 1640(e) defines an

19  "action" as a court proceeding.  15 U.S.C. § 1640(e) ("Any action…may be brought in any United

20  States district court, or in any other court of competent jurisdiction…").  <u>Ortiz</u>, 2009 U.S. Dist.

21  LEXIS 62496, at *11.  Further, under California law, Cal. Civ. Proc. Code § 726 (governing

22  foreclosures of mortgages or deeds of trust) provides that an "action for the recovery of any debt or

23  the enforcement of any right secured by mortgage upon real property" results in a judgment from

24  the court directing the sale of the property and distributing the resulting funds.  Also, Cal. Civ.

25

26      [7]  Plaintiffs argue "[t]he mere fact that the debtor is the plaintiff in a TILA case does not
    preclude a finding that the claim was raised defensively," (Opp. at 7,) citing <u>Williams v. Countrywide</u>
27  <u>Home Loans</u>, Inc., 504 F. Supp. 2d 176, 188 (S.D. Tex. 2007).  This  finding does not establish
    whether a non-judicial foreclosure sale properly constitutes an "action" for purposes of a defensive
28  recoupment claim under TILA.

     [8]  2009 U.S. Dist. LEXIS 62496 (S.D. Cal. July 13, 2009).

Proc. Code § 22 defines an "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."  The <u>Ortiz</u> court noted that neither TILA nor California law defines an "action" as "the *extra-judicial* exercise of a right of sale under a deed of trust, which is governed by Cal. Civ. Code § 2924, et seq."  <u>Ortiz</u>, 2009 U.S. Dist. LEXIS 62496, at *12.

Here, like in <u>Ortiz</u>, Plaintiffs have not alleged that Defendant has sought judicial enforcement of its efforts to foreclose on the Property.  Because Defendant has not brought any judicial "action to collect a debt," Plaintiffs' recoupment claim has not properly been asserted as a defense.  <u>Accord</u> <u>Ortiz</u>, 2009 U.S. Dist. LEXIS 62496, at *13; <u>Amaro v. Option One Mortg. Corp.</u>, 2009 U.S. Dist. LEXIS 2855, at * (C.D. Cal. Jan. 14, 2009) (rejecting plaintiff's argument that recoupment is a defense to a non-judicial foreclosure and holding "Plaintiff's affirmative use of the claim is improper and exceeds the scope of the TILA exception….").  Plaintiffs' recoupment claim is therefore dismissed.

### 4.    Rosenthal Fair Debt Collection Practices Act Claim

Plaintiffs allege Defendants violated provisions of the RFDCPA, Cal. Civ. Code §§1788.10 *et seq.*  Cal. Civ. Code §§1788.10-1788.18 comprise an article of the RFDCPA entitled "Debt Collector Responsibilities."  These provisions apply only to "debt collectors" who "collect or attempt to collect a consumer debt." See Cal. Civ. Code §§1788.10-1788.18; <u>see</u> <u>also</u> <u>Gouskos v. Aptos Vill. Garage</u>, 94 Cal. App. 4th 754, 759 (Cal. Ct. App. 2001) (affirming directed verdict in favor of the defendant because it was not a "debt collector" within the meaning of the RFDCPA).  Under the RFDCPA, "[t]he term 'debt collector' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law."  Cal. Civ. Code § 1788.2 (2009).

Plaintiffs allege that Defendant is in the business of "the collection of consumer debts, either on behalf of itself or others."  (Compl. at 3.)  Defendant argues Plaintiffs fail to allege facts

1   to support their "conclusory" allegation that it is a "debt collector" within the meaning of the

2   RFDCPA because their complaint relates only to Defendant's alleged failure to comply with

3   TILA's disclosure requirements and Defendant's efforts to foreclose on Plaintiffs' property.

4   Defendant contends these are not debt collection activities under the RFDCPA.  In response,

5   Plaintiffs argue they have sufficiently alleged Defendant violated the RFDCPA because "[d]espite

6   receipt of the Rescission Notice and dispute of the debt, defendant CCCRP continued its collection

7   efforts of a disputed debt, scheduled a foreclosure sale, demanded payment of false amounts, and

8   threatened action prohibited by law."  (Opp. at 8, citing Compl. at 5.)

9        The Court agrees with Defendant that the activity of foreclosing on a property pursuant to a

10   deed of trust is not the collection of a debt within the meaning of the RFDCPA.  Izenberg v. ETS

11   Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); Walker v. Equity 1 Lenders Group,

12   2009 U.S. Dist. LEXIS 40991, at *19-20 (S.D. Cal. May 14, 2009); Ines v. Countrywide Home

13   Loans, Inc., 2009 U.S. Dist. LEXIS 21016, at *10-11 (S.D. Cal. Mar. 12, 2009); Tina v.

14   Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 88302, at *17-19 (S.D. Cal. Oct. 30,

15   2008).  Plaintiffs' remaining allegations of RFDCPA violations are conclusory statements that

16   Defendant "continued its collection efforts of a disputed debt," "demanded payment of false

17   amounts," "threatened action prohibited by law," "increas[ed] the amount of a debt by including

18   amounts that are not permitted by law or contract," and "us[ed] unfair and unconscionable means

19   in an attempt to collect a debt."  (See Compl. ¶¶ 14-16, 39.)  These labels and conclusions, without

20   further substantiation, fail to state a claim under the RFDCPA.  See Twombly, 550 U.S. 544 at 555

21   ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

22   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

23   do.") (citation omitted).  Plaintiffs' RFDCPA claim is therefore dismissed.

24                    5.     Quiet Title Claim

25        Plaintiffs allege a quiet title cause of action in that "Defendant CCCRP claims an interest

26   adverse to Plaintiffs' Residence in the form of the trust deed recorded pursuant to the Transaction,

27   and Plaintiffs are seeking to quiet title against the claims of defendant CCCRP under such trust

28   deed."  (Compl. at 9.)  Plaintiffs seek to quiet title as of November 10, 2006, the date of the loan

transaction.  (Id.)

California Code of Civil Procedure Section 761.020 provides that a complaint for quiet title "shall be verified" and shall include the following:

> (a) A description of the property that is the subject of the action. . . . In the case of real property, the description shall include both its legal description and its street address or common designation, if any.
>
> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. . . .
>
> (c) The adverse claims to the title of the plaintiff against which a determination is sought.
>
> (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.
>
> (e) A prayer for the determination of the title of the plaintiff against the adverse claims.

Cal. Civ. Proc. Code § 761.020 (2009).  Here, the complaint does not contain a legal description of the property, and is not verified.  Plaintiffs therefore fail to state a claim for quiet title.

### 6.    Accounting Claim

Plaintiffs's fourth cause of action is for an accounting "pursuant to 15 U.S.C. § 1635(b) and 12 U.S.C. § 2605."  (Compl. at 9.)  Plaintiffs claim these statutes entitle them to "an accounting for and return of certain amounts paid by Plaintiffs since the inception of the Transaction, and the amount, if any, to be tendered by Plaintiffs as a result of Plaintiffs' rescission of the Transaction." (Id.)  To state a claim for an accounting, a plaintiff must allege: (1) a fiduciary relationship or other circumstances appropriate to the remedy; and (2) A balance due from the defendant to the plaintiff that can only be ascertained by an accounting.  5 Witkin, Cal. Proc. 5th (2008) Pleading § 820.

Here, plaintiffs have not alleged a fiduciary relationship with Defendant, nor have they asserted any other circumstances warranting an accounting.  15 U.S.C. § 1635(b), as discussed *supra*, governs an obligor's right to rescind a transaction under TILA.  That particular section does not impose a duty to provide an accounting to a borrower.  Moreover, an accounting is not an available statutory remedy under TILA's civil liability provisions.  See 15 U.S.C. § 1640(a)

1   (2009).  12 U.S.C. § 2605, the other statute Plaintiffs invoke, is a section of the federal Real Estate

2   Settlement Procedures Act ("RESPA.")  Beyond the fact that § 2605 does not impose a duty to

3   provide an accounting to a borrower, Plaintiffs have not alleged Defendant has violated RESP.

4        Moreover, the complaint does not state a cause of action for an accounting where it shows

5   on its face that none is necessary; i.e., where the plaintiff alleges a right to recover a sum certain or

6   a sum that can be made certain by calculation.  St. James Church of Christ Holiness v. Superior

7   Court, 135 Cal. App. 2d 352, 359 (Cal. Ct. App. 1955); see also id. ("A suit for an accounting will

8   not lie where it appears from the complaint that none is necessary or that there is an adequate

9   remedy at law.")  Here, plaintiffs have not alleged Defendants owe them a balance that can only be

10  ascertained by an accounting.  Plaintiffs claims for an accounting is therefore denied.

11                          7.      Declaratory Relief

12       In Plaintiffs' claim for declaratory relief, they seek a declaration that "the Transaction was

13  rescinded, the security interest held by defendant CCCRP is void, and no foreclosure of Plaintiffs'

14  residence can take place."  (Compl. at 10.)  Defendant argues the resolution of Plaintiffs'

15  substantive TILA claims will render declaratory relief moot.

16       "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in

17  clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief

18  from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Guerra v. Sutton,

19  783 F.2d 1371, 1376 (9th Cir. 1986).  While "[t]he existence of another adequate remedy does not

20  preclude a declaratory judgment that is otherwise appropriate," Fed. R. Civ. P. 57 (2009), "[t]he

21  availability of other adequate remedies may make declaratory relief 'inappropriate,'" StreamCast

22  Networks, Inc. v. IBIS LLC, 2006 U.S. Dist. LEXIS 97607, at *10 (C.D. Cal. May 1, 2006).

23  Moreover, a federal court may decline to address a claim for declaratory relief "[w]here the

24  substantive suit would resolve the issues raised by the declaratory judgment action, … because the

25  controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated."  Tina v.

26  Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 88302, at *6 (S.D. Cal. Oct. 30, 2008)

27  (citing Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987)).

28       Here, the complaint does not suggest that a declaratory judgment would entitle Plaintiffs to

any relief beyond the relief requested pursuant to their substantive claims or that a declaratory judgment would resolve any uncertainties aside from those already addressed by the substantive claims.  As such, Plaintiffs' declaratory relief claim is dismissed.

### CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to compel arbitration, and grants Defendant's motion to dismiss the complaint in part.  Plaintiffs' TILA damages claim is dismissed WITH PREJUDICE to the extent it is premised on insufficient disclosures at the consummation of the loan.  Plaintiffs' TILA recoupment, RFDCPA, quiet title, accounting, and declaratory relief claims are dismissed WITHOUT PREJUDICE.  Plaintiffs may file a first amended complaint curing the deficiencies described herein no later than **September 4, 2009**.

**IT IS SO ORDERED.**

**DATED:  August 13, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**