# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HORTON, an individual;<br>CATHIE L. HORTON, an individual,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br><br>CALIFORNIA CREDIT CORP.<br>RETIREMENT PLAN, an entity of unknown<br>form; FORECLOSURE SPECIALISTS,<br>INC., doing business as Zenith Trustee<br>Services, a California Corporation; DOES 1-<br>10, inclusive,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 09-cv-274 – IEG (NLS)<br><br>ORDER:<br><br>(1) GRANTING IN PART AND<br>DENYING IN PART PLAINTIFFS'<br>MOTION FOR SUMMARY<br>JUDGMENT, [Doc. No. 66]; and<br><br>(2) GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT, [Doc. No. 67]. |

　　　This is a mortgage case brought by Plaintiffs Michael and Cathie Horton for alleged violations of the Truth in Lending Act ("TILA") and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). Defendant California Credit Corp. Retirement Plan ("CCCRP") is the only remaining Defendant. Currently before the Court is Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. Having considered the parties' arguments, and for the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for summary judgment as to: (1) count one of the first cause of action, seeking rescission under TILA; (2) the third cause of action, seeking to quiet title; and (3) the fourth cause of

action for violations of the California's unfair competition law.  Furthermore, the Court **GRANTS** Defendant's motion for summary judgment as to: (1) count two of the first cause of action, seeking damages under TILA; and (2) the second cause of action for violations of the RFDCPA.  Finally, the Court **DENIES** the parties' motions for summary judgment in all other respects.

**BACKGROUND**

I.     **Factual background**

Plaintiffs are the married owners and occupants of 10272 Rancho Carmel Drive, San Diego, California 92128 ("the Property").  On November 10, 2006, Plaintiffs entered into a Home Equity Line of Credit Agreement ("the Note") with Defendant CCCRP for a total amount of $70,000.  The Note was secured by a California Open-End Deed of Trust ("Deed of Trust") in second position against the Property.  The loan was primarily for personal, family, and household purposes.  The amount advanced to Plaintiffs was approximately $60,000 to $65,000.

During the loan consummation, Plaintiffs received and signed numerous documents.  Among the documents was a Notice of Right to Cancel ("NRC") form.  (*See* Henry Decl. ISO Def.'s MSJ, Ex. C [Doc. No. 67-4].)  The NRC form informed Plaintiffs that they were "entering into a transaction that will result in a security interest in [CCCDP's] favor in [Plaintiff's] home" and that they had "a legal right under Federal Law to cancel [that] transaction, without **any** cost, within three business days from whichever of the following events occurs **last**":

> (1) the date that you sign the Note & Trust Deed, the recording of which will create a security interest in your home; that date is: ___11/10/06___; or
>
> (2) the date you received your Truth In Lending disclosures; or
>
> (3) the date you received this Notice Of Right To Cancel.

(*Id.*)  The NRC form did not contain a specific numeric date upon which Plaintiffs' right to cancel would expire.  Rather, the NRC form included the following explanation:

> A business day for the purpose of your right of rescission is all calendar days except Sundays and holidays.  The holidays that are recognized for this purpose are New Year's Day, Presidents Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day and Christmas Day.  For example, if you sign the Note and Trust Deed on a Thursday, then your right to rescind expires at midnight on the following Monday, unless that Monday should be a recognized holiday, then your right to rescind would expire at midnight on the following Tuesday.  If you sign the Note and Trust Deed on a Monday, then your right to rescind would expire at midnight on the following Thursday.

(*Id.*)  At the very end, the NRC form stated: "The undersigned hereby acknowledge(s) receipt of two copies of the above **NOTICE OF RIGHT TO CANCEL**."  (*Id.*)  The NRC form then provided a space for Michael Horton to sign and a space for Cathie Horton to sign.  (*Id.*)

Defendant alleges that from September 2007 to August 2008, Plaintiffs failed to pay at least nine monthly statements.  (*See* Henry Decl., Ex. F.)

Plaintiffs allege that on September 5, 2008, they mailed their regular monthly payment to Defendant.  (Cathie Horton Decl. ISO Pl.'s MSJ, ¶ 6 [Doc. No. 66-3].)  Defendant acknowledges receiving on September 10, 2008 a check from Plaintiffs in the amount of $741.00, but disputes that this was Plaintiffs' "regular monthly payment." [Doc. No. 69-2, ¶ 14.]  On September 8, 2008, Plaintiffs received a letter from Zenith Trustee Services indicating that Plaintiffs' loan was in foreclosure.  On September 11, 2008, Defendant returned Plaintiffs' September 5 payment to Plaintiffs with a letter stating that the "reason for the return is that [Plaintiffs'] file has been forwarded to Zenith Trustee Services to initiate foreclosure proceedings."  On September 30, 2008, Plaintiffs mailed two checks in an attempt to bring the loan payments current.  The checks were returned with a letter stating that the amounts were insufficient to bring the loan current.

On September 3, 2008, Defendant recorded a Notice of Default against the Property.  On November 25, 2008, the first deed holder Chase Home Financial LLC ("Chase") also recorded a Notice of Default.  On November 28, 2008, Plaintiffs mailed a Notice of Rescission of Loan Transaction ("Rescission Notice") to Defendant and to Zenith Trustee Services, seeking to rescind the loan and indicating readiness to discuss any tender obligations.  (Raymond Decl. ISO Pl.'s MSJ, Ex. DLR-A [Doc. No. 66-4].)  On February 9, 2009, Defendant recorded a Notice of Trustee's Sale against the Property, setting the sale for March 4, 2009.  Subsequently, Chase also recorded a Notices of Trustee's Sale—on February 27, 2009 and on June 21, 2010.[1]

## II.   Procedural background

Plaintiffs filed their complaint on February 13, 2009, and shortly thereafter moved for a temporary restraining order ("TRO") and a preliminary injunction to stay the foreclosure

---

[1] Plaintiffs allege that they have since entered into a loan modification agreement with Chase. If that is true, it would appear that Plaintiffs are no longer in default on the Chase loan.

proceedings. This Court granted the TRO on February 25, 2009, and granted the preliminary injunction on March 16, 2009. The preliminary injunction is still in place.

On August 13, 2009, the Court denied Defendant's motion to compel arbitration and granted in part and denied in part Defendant's motion to dismiss the complaint. Plaintiffs filed their Verified First Amended Complaint ("VFAC") on September 4, 2009, alleging four causes of action: (1) rescission and damages under TILA; (2) violations of the RFDCPA; (3) quiet title; and (4) violation of California's unfair competition law ("UCL"). Defendant filed an answer to the VFAC on September 24, 2009.

On September 22, 2010, Plaintiffs filed a Notification of Bankruptcy. Based on that notification, the Court automatically stayed this case and denied as moot Defendant's motion for summary judgment and Plaintiffs' motion for partial summary judgment. On September 26, 2011, having received Plaintiffs' notice of bankruptcy discharge, the Court re-opened the action.

The parties have now filed their respective motions for summary judgment, oppositions, and replies. Plaintiffs seek partial summary judgment on the first, third, and fourth causes of action. Defendants seek summary judgment on all causes of action or, in the alternative, partial summary judgment. Both Plaintiffs and Defendants also filed evidentiary objections.[2]

## LEGAL STANDARD

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is a question that a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. Where the moving party does not

---

[2] To the extent any of the objections are not addressed below, they are **OVERRULED**.

have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A party asserting that a fact cannot be or is genuinely disputed cannot rely solely on its pleadings, but must support that assertion with citations to the record, such as affidavits, depositions, admissions, or answers to interrogatories. Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). To avoid summary judgment, the non-moving party need not produce evidence in a form that would necessarily be admissible at trial. *Celotex*, 477 U.S. at 324. However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *See Hernandez*, 343 F.3d at 1112; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

## DISCUSSION

For the most part, the parties' motions for summary judgment overlap. Thus, Plaintiffs seek summary judgment on the following causes of action: (1) rescission and damages under TILA; (2) quiet title; and (3) California's UCL. Defendant seeks summary judgment on the same three causes of action and also on (4) violations of the RFDCPA.

**I.     TILA violations**

Plaintiffs assert they are entitled to summary judgment on claim one of their first cause of action, which seeks rescission for TILA violations, for the following reasons: (1) Defendant used an improper NRC form; (2) Plaintiffs did not each receive two copies of the NRC form; and (3) the NRC form failed to include a specific numeric date upon which the right to cancel would expire. Furthermore, Plaintiffs assert they are entitled to summary judgment on claim two of their

first cause of action, which seeks actual and statutory damages for TILA violations, because Defendant failed to comply with their Rescission Notice.

Defendant asserts that it is entitled to summary judgment on claim one of the first cause of action because: (1) Plaintiffs failed to tender, or allege an ability to tender, the proceeds of the loan; (2) the NRC form used was comparable to the required Model Form G-5; (3) Plaintiffs acknowledged that they each received two copies of the NRC form; and (4) the NRC form informed Plaintiffs when their right to cancel would expire using language nearly identical to that used in Model Form G-5. Defendant also asserts it is entitled to summary judgment on claim two of the first cause of action because the NRC form complied with all TILA requirements.

### A. Ability to tender

Defendant first argues that Plaintiffs' first cause of action fails in its entirety because Plaintiffs have not tendered, or alleged an ability to tender, the loan proceeds. The rescission-tender sequence is governed by 15 U.S.C. § 1635(b), which provides:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

Section 1635(b) further provides that the procedures described therein "shall apply except when otherwise ordered by a court." 15 U.S.C. § 1635(b). In *Yamamoto v. Bank of New York*, the Ninth Circuit explained that the decision on whether to depart from the 'rescission first, tender second' sequence is left to the discretion of the district court, and must be approached on a "case-by-case basis." 329 F.3d 1167, 1173 (9th Cir. 2003) (concluding that the district court did not abuse its discretion in reversing the rescission-tender sequence where it was "clear from the evidence that the borrower lacks capacity to pay back what she has received"). The propriety of modifying the rescission-tender order depends "on the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act

and the remedial-penal nature of the private enforcement provisions of the Act." *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974) (remanding where the district court was apparently unaware that it had the equitable power to condition rescission upon tender).

In the present case, modifying the rescission-tender order does not appear appropriate. The outstanding balance on the loan, estimated between $41,000 and $70,000, (*compare* Pl.'s Statement of Undisputed Facts ¶ 29 [Doc. No. 66-5], *with* Def.'s Statement of Material Facts ¶ 13 [Doc. No. 67-2]), is worth a fraction of the Plaintiffs' residence. As such, it appears the equities weigh against requiring Plaintiffs to tender first.

Moreover, even cases cited by Defendant have found that where the plaintiff is able to demonstrate an *ability* to tender, that is sufficient for the plaintiff's TILA claim to go forward.[3] In this case, Plaintiffs have expressly declared under the penalty of perjury their willingness and ability to tender the outstanding loan balance. Specifically, Plaintiffs declare: "We are ready[,] willing and able to tender to CCCRP from funds made available to us from a family member. We hereby offer to tender the full tender amount under the Truth In Lending Act, 15 U.S.C. § 1635." (Michael Horton Decl. ISO Pl.'s MSJ, ¶ 10 [Doc. No. 66-2]; Cathie Horton Decl. ¶ 12.) The Court finds these declarations to be sufficient to demonstrate Plaintiffs' ability to tender.

B.     Rescission

Section 1635 governs the borrower's right under TILA to rescind a "consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a); *see also* 12 C.F.R. § 226.15(a). While the borrower's right of rescission must normally be exercised within a three-day period, TILA extends that period to three years under certain circumstances. *See* 15 U.S.C. § 1635(f), (i); 12 C.F.R. § 226.15(a)(3) ("If the required notice and

---

[3] *See, e.g.*, *Monahan v. Decision One Mortg. Co.*, 10-CV-2078-H (RBB), 2011 WL 335051, at *2 (S.D. Cal. Jan. 28, 2011); *Ortiz v. Mortgage It, Inc.*, No. 09cv2103 WQH (AJB), 2010 WL 3220110, at *4 (S.D. Cal. Aug. 12, 2010); *Garza v. Am. Home Mortg.*, No. CV F 08-1477 LJO GSA, 2009 WL 188604, at *5 (E.D. Cal. Jan. 27, 2009); *see also Kakogui v. Am. Brokers Conduit*, No. C. 09-4841 JF (HRL), 2010 WL 1265201, at *5 (N.D. Cal. 2010) (noting two lines of cases that have developed among the district courts in the Ninth Circuit and concluding that the court will only require that "Plaintiff allege either the present ability to tender the loan proceeds or the expectation that he will be able to tender within a reasonable time").

material disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.").

### 1. *Form of notice of rescission*

Plaintiffs assert that they are entitled to rescission because the NRC form did not comply with the proper form of notice of rescission. Section 1635 provides that,

> in addition to any other right of rescission available under this section for a transaction, after the initiation of any . . . nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction . . . if . . . the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

15 U.S.C. § 1635(i)(1)(B). Plaintiffs contend that Defendant should have utilized the Open-End Model Form G-5 ("G-5 Form") contained in Appendix G to Regulation Z, 12 C.F.R. § 226. Defendant does not dispute this. Rather, it asserts that the NRC form provided to Plaintiffs is "comparable" to the G-5 Form, and thus complies with TILA. *See* 15 U.S.C. § 1635(h), (i)(1)(B).

Assuming, without deciding, that Defendant was required to use the G-5 Form, the Court concludes that Defendant's NRC form is "comparable" to that form, and therefore Plaintiffs are not entitled to the extended three-year rescission period on this basis.

First, Plaintiffs take issue with the fact that the NRC form uses a different first sentence than the G-5 Form. The G-5 Form begins as follows:

> We have agreed to establish an open-end credit account for you, and you have agreed to give us a [mortgage/lien/security interest] [on/in] your home as security for the account.

12 C.F.R. § 226, App. G-5. The NRC form, on the other hand, begins as follows:

> You are entering into a transaction that will result in a security interest in our favor in your home.

(Henry Decl., Ex. C.) While the NRC form admittedly fails to inform the borrower that he is entering into an "open-end credit account," the Court is not persuaded that this information is material in this context. Rather, as Defendant persuasively argues, the goal of the NRC form is to inform the borrower of the *right to cancel*, not of the type of account that he is entering into. Accordingly, the first sentence in the NRC form is "comparable" to the G-5 Form's first sentence,

1  and therefore the extended three-year period does not apply.  *See* 15 U.S.C. § 1635(h), (i)(1)(B).

2  Second, Plaintiffs assert that the NRC form omits the following line:

3  (1) the opening date of your account which is _____.

4  *See* 12 C.F.R. § 226, App. G-5.  Instead, the NRC form contains the following line:

5  (1) the date that you sign the Note & Trust Deed, the recording of which will create a security interest in your home; that date is: ___11/10/06___[.]

6  (Henry Decl., Ex. C.)  The Court cannot discern any material difference between the two lines.

7  The line used in the NRC form is "comparable" to the line contained in the G-5 Form, and

8  therefore the extended three-year period does not apply.  *See* 15 U.S.C. § 1635(h), (i)(1)(B).

9  Third, Plaintiffs contend the NRC form improperly omits the following sentence, which

10  would normally indicate the specific numeric date when the right to cancel would expire:

11  If you cancel by mail or telegram, you must send the notice no later than midnight of _____(date)_____ (or midnight of the third business day following the latest of the three events listed above).

12  

13  *See* 12 C.F.R. § 226, App. G-5.  Instead, the NRC form contains the following language:

14  If you cancel by mail, telegram or fax, you must send the notice no later than the third business day following the latest of the three events listed above.

15  

16  (Henry Decl., Ex. C.)  Defendant, on the other hand, contends that because its NRC form utilizes

17  one of the two suggested parentheticals used by the G-5 Form, it is at least "comparable" to the G-

18  5 Form.  The Court will addresses this issue in more detail below.  *See infra* Part I.B.3.

19  Finally, Plaintiffs assert the NRC form fails to define "business day" accurately because it

20  fails to list "the Birthday of Martin Luther King, Jr." as a holiday and misstates "Washington's

21  Birthday" as "Presidents Day."  *See* 12 C.F.R. § 226.2(a)(6).  However, the G-5 Form does not

22  include *any* definition of a "business day."  *See* 12 C.F.R. § 226, App. G-5.  Accordingly, because

23  the NRC form contains more information than is required by the G-5 Form, the Court concludes

24  that it is at least "comparable" to the G-5 Form,  and therefore the extended three-year period does

25  not apply.  *See* 15 U.S.C. § 1635(h), (i)(1)(B).

26      2.  *Number of NRC forms received*

27  Plaintiffs assert that they are entitled to the extended three-year rescission period because

28  they did not receive "two copies . . . each" of the NRC form.  *See* C.F.R. § 226.15(b); *see also* 12

1  C.F.R. § 226.15(a)(3) (providing for the extended rescission period "[i]f the required notice and
2  material disclosures are not delivered"). Defendant, on the other hand, asserts that Plaintiffs each
3  received two copies of the NRC form. Having considered the language of the NRC form that both
4  parties rely upon,[4] the Court believes it presents a genuine issue of material fact because the trier
5  of fact could reasonably find in favor of either party on the issue. *See Anderson*, 477 U.S. at 248,
6  250. Therefore, at this stage, summary judgment is inappropriate as to this issue. *See id.*

          *3.      Specific numeric date when the right to cancel would expire*

8  Finally, Plaintiffs contend they are entitled to summary judgment because the NRC form
9  failed to inform them of the specific numeric date when the right to cancel would expire.
10 Defendants, on the other hand, assert that there is no need to provide a specific numeric date
11 because, using the detailed instructions in the NRC form as to what constitutes a "business day," it
12 can easily be calculated by adding three days to the date when the loan documents were signed.

13 The Court agrees with Plaintiffs that they are entitled to the extended three-year rescission
14 period on this basis. Section 226.15(b)(5) states that the notice of right to rescind "shall . . .
15 clearly and conspicuously disclose . . . the date the rescission period expires." 12 C.F.R. §
16 226.15(b)(5); *see also* 15 U.S.C. § 1635(a). In *Semar v. Platte Valley Federal Savings & Loan*
17 *Association*, the Ninth Circuit concluded that Regulation Z "'makes clear that failure to fill in the
18 expiration date of the rescission form is a violation of the TILA.'" 791 F.2d 699, 704 (9th Cir.
19 1986) (quoting *Williamson v. Lafferty*, 698 F.2d 767, 768-69 (5th Cir. 1983)). Moreover,
20 "[t]echnical or minor violations of TILA or Reg[ulation] Z, as well as major violations, impose
21 liability on the creditor and entitle the borrower to rescind." *Id.* Accordingly, "'[t]o insure that the
22 consumer is protected,'" the Ninth Circuit concluded that TILA and Regulation Z "'must be
23 absolutely complied with and strictly enforced.'" *Id.* (citation omitted).

24 In *Semar*, just like in this case, the lender's notice of right to rescind form omitted the
25 specific date on which the three-day rescission period expired. *See id.* at 702. Rather, just like in
26 this case, the form only stated that the rescission right expired three business days after July 16.

---

28 [4] The NRC form contains the following sentence at the very end: "The undersigned hereby acknowledge(s) receipt of two copies of the above **NOTICE OF RIGHT TO CANCEL**," followed by a space for Michael Horton to sign and a space for Cathie Horton to sign. (Henry Decl., Ex. C.)

1  *See id.* The Ninth Circuit concluded that this "purely technical violation" of TILA was sufficient
2  to entitle the plaintiffs to rescind within three years, "without regard to whether the omission was
3  material." *Id.* at 704-05. In this case, Defendant similarly failed to include a specific date on
4  which the three-day rescission period expired. The fact that "Plaintiffs could easily calculate when
5  three days had elapsed from the latest of the three events listed," (*see* Def.'s Opp., at 4), is
6  irrelevant under *Semar*, which addressed and rejected a similar argument. *See id.* at 702, 704-05
7  (allowing the plaintiff to rescind within three years where the form omitted the specific expiration
8  date, even though the form "stated that the rescission right expired three business days after July
9  16"). Accordingly, Plaintiffs are entitled to rescind within three years. *See id.* at 704-05.

        *4.     Conclusion*

11  For the foregoing reasons, Plaintiffs were entitled to the extended three-year rescission
12  period due to Defendant's failure to include in the NRC form a specific date when the three-day
13  rescission period expired. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(b)(5); *Semar*, 791 F.2d at
14  704-05. Moreover, because Plaintiffs originated their loan on November 10, 2006, their attempt to
15  rescind the loan by mailing the Rescission Notice on November 28, 2008 was timely. *See* 15
16  U.S.C. § 1635(f); 12 C.F.R. § 226.15(a)(3). Defendant does not challenge the adequacy of the
17  Rescission Notice itself. As such, the Court **GRANTS** Plaintiffs' motion for summary judgment
18  as to claim one of their first cause of action for rescission under TILA and **DENIES** Defendant's
19  respective motion for summary judgment. Plaintiffs are entitled to rescind their loan.

20          C.    Damages

21  On the other hand, the Court rejects Plaintiffs' argument that they are entitled to actual and
22  statutory damages under 15 U.S.C. § 1640(a). Section 1635(g) provides that, "[i]n any action in
23  which it is determined that a creditor has violated this section, in addition to rescission the court
24  may award relief under section 1640 of this title for violations of this subchapter not relating to the
25  right to rescind." Section 1640(a), in turn, allows recovery of actual and statutory damages where
26  the creditor "fails to comply with any requirement imposed under this part, including any
27  requirement under section 1635 of this title."

28  In this case, Plaintiffs assert that they are entitled to damages due to Defendant's

intentional failure and refusal to comply with their rescission. According to Plaintiffs, Defendant was required to return any money or property and to take appropriate action to terminate the security interest in the Property within 20 days of receipt of Plaintiffs' Rescission Notice. *See* 15 U.S.C. § 1635(b); 12 C.F.R. § 226.15(d). Plaintiffs contend that Defendant's failure to do so caused them emotional distress, leading to actual damages under § 1640(a).

However, as Defendant correctly points out, Plaintiffs' rescission was not automatically effective upon the receipt of the Rescission Notice. Rather, as the Ninth Circuit explained:

> [Where the lender contests the notice of rescission], it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest "becomes void" only when the consumer "rescinds" the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor.
>
> .... [T]he "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. ... Until such decision is made, the borrowers have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (internal citations omitted). Because Defendant here contested Plaintiffs' right to rescission, Plaintiffs have not yet "rescinded" the transaction. *See id.* Accordingly, because Defendant has not violated any provision of § 1635 to entitle Plaintiffs to damages under § 1640(a), the Court **DENIES** Plaintiffs' motion for summary judgment on count two of their first cause of action and **GRANTS** Defendant's respective motion.

## II.     RFDCPA violations

Defendant moves for summary judgment on Plaintiffs' second cause of action for violations of the RFDCPA. *See* Cal. Civ. Code § 1788 et seq. It argues that it is not a "debt collector," and that foreclosure proceedings are not debt collection activities, within the meaning of the RFDCPA. It further argues that its alleged actions did not violate the RFDCPA because they were permissible under both the law and the Deed of Trust in this case.

First, the Court agrees that Defendant is a "debt collector" under the RFDCPA. The definition of the "debt collector" under the RFDCPA is broader than under the federal Fair Debt Collection Practices Act ("FDCPA") and includes any person who, "in the ordinary course of

business," collects a debt "on behalf of himself or herself or others." *See* Cal. Civ. Code § 1788.2(c). In this case, because Defendant is collecting a debt that it originated, and because it does so "in the ordinary cause of business," it is a "debt collector" under the RFDCPA. *See id.*

Second, the Court is persuaded that Defendant's actions in this case are covered by the RFDCPA. On the one hand, as Defendant argues, numerous California district courts have concluded that the activity of foreclosing on a property pursuant to a deed of trust does not constitute "debt collection" under the RFDCPA.[5] On the other hand, while the Ninth Circuit does not appear to have opined on this issue, several other Courts of Appeal have concluded that foreclosing on a property pursuant to a deed of trust or some other lien *does* constitute debt collection under the FDCPA. *See, e.g.*, *Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2006) ("We therefore hold that a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests."); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) ("Wilson's 'debt' remained a 'debt' even after foreclosure proceedings commenced."); *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt). Specifically, the Court finds the reasoning of the Fourth Circuit persuasive:

---

[5] *See, e.g.*, *Champlaie v. BAC Home Loans Serv., LP*, 706 F. Supp. 2d 1028, 1054-55 (E.D. Cal. 2009) ("Foreclosure on a property as security on a debt is not debt collection activity encompassed by the Rosenthal Act." (citations omitted)); *Walker v. Equity 1 Lenders Group*, No. 09cv325 WQH (AJB), 2009 WL 1364430, at *7 (S.D. Cal. May 14, 2009) ("The "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA or the RFDCPA." (citations omitted)); *Izenberg*, 589 F. Supp. 2d at 1199 ("[F]oreclosure does not constitute debt collection under the RFDCPA . . . ."); *Ines v. Countrywide Home Loans, Inc.*, No. 08cv1267 WQH (NLS), 2008 WL 4791863, at * (S.D. Cal. Nov. 3, 2008) ("The Court finds that the Complaint arises out of the allegedly unlawful foreclosure on Plaintiff's property pursuant to a deed of trust, which does not fall within the meaning of the RFDCPA or the FDCPA."); *Tina v. Countrywide Home Loans, Inc.*, No. 08 CV 1233 JM (NLS), 2008 WL 4790906, at *7 (S.D. Cal. Oct. 30, 2008) (holding that "the 'activity of foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of the' FDCPA" and noting that "Plaintiffs fail[ed] to demonstrate how the Rosenthal Act provides them [with] greater substantive protections" (citations omitted)).

> We disagree with Defendants' argument that they were not acting in connection with a "debt." Defendants notified Wilson that she was in "default in [her] Deed of Trust Note payable to the Lender ... [and] that the Lender [had] accelerated the debt." Defendants informed Wilson that her failure to make mortgage payments entitled Chase to immediate payment of the balance of her loan, as well as fees, penalties, and interest due. These amounts are all "debts" under the Act, because they were "obligation[s] ... to pay money arising out of a transaction in which the ... property ... which [is] the subject of the transaction [is] primarily for personal, family, or household purposes." 15 U.S.C.A. § 1692a(5).
>
> Defendants contend that foreclosure by a trustee under a deed of trust is not the enforcement of an obligation to pay money or a "debt," but is a termination of the debtor's equity of redemption relating to the debtor's property. In essence, Defendants argue that Wilson's "debt" ceased to be a "debt" once foreclosure proceedings began. Defendants rely on reported and unreported district court decisions, . . . which reasoned that "foreclosing on a deed of trust is an entirely different path [than collecting funds from a debtor]. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."
>
> We disagree. Wilson's "debt" remained a "debt" even after foreclosure proceedings commenced. Furthermore, Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt.
>
> Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.

*Wilson*, 443 F.3d at 376 (most internal citations omitted); *see also Allen v. United Fin. Mortg. Corp.*, No. 09-2507 SC, 2010 WL 1135787, at *6 (N.D. Cal. Mar. 22, 2010) (finding *Wilson* "compelling," although not necessarily controlling, and denying defendant's motion to dismiss plaintiff's FDCPA claim); *Carter v. Deutsche Bank Nat'l Trust Co.*, No. C09-3033 BZ, 2010 WL 1875718, at **1-2 (N.D. Cal. May 7, 2010) (relying in part on *Wilson* in denying defendant's motion to dismiss plaintiff's FDCPA claim against a foreclosure trustee).

Nonetheless, even if Defendant's alleged activities constitute "debt collection," Plaintiffs have failed to demonstrate that any of those activities were in violation of the RFDCPA.

First, while the RFDCPA prohibits "[t]he threat to any person that nonpayment of the consumer debt may result in the . . . sale of any property," it allows such activity where "such action is in fact contemplated by the debt collector and permitted by the law." Cal. Civ. Code § 1788.10(e). Similarly, under the FDCPA, which is incorporated into the RFDCPA, *see* Cal. Civ. Code § 1788.17, the debt collector is prohibited from "[t]aking or threatening to take any

nonjudicial action to effect dispossession . . . of property," if:

>   (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
>   (B) there is no present intention to take possession of the property; or
>
>   (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6). In this case, both the Note and the Deed of Trust expressly provide that if Plaintiffs fail to make their monthly payments, they will be in default and Defendant may foreclose on the Property. This is exactly what occurred here. Although Plaintiffs assert in a conclusory manner that they have not missed any monthly payments, (*see* Cathie Horton Decl. ¶ 7), the Court does not believe there is any *genuine* dispute as to the fact that Plaintiffs made a number of untimely payments and failed to make some of the payments. (*See, e.g.*, Henry Decl., Ex. F (setting forth Plaintiffs' loan payment history, which shows several missed payments between February 2007 and August 2008 and indicates that Plaintiffs' account went into "foreclosure" at one point, before it was reinstated on April 8, 2008 upon Plaintiffs' payment of $10,465.93).) Accordingly, Defendant was entitled to institute the foreclosure proceedings based on Plaintiffs' default. As such, Defendant's foreclosure activities, even if "debt collection," did not violate the RFDCPA or the FDCPA. *See* Cal. Civ. Code § 1788.10(e); 15 U.S.C. § 1692(f)(6).

Similarly, the RFDCPA prohibits any "false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges," *unless* such fees or charges may "legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e). In this case, the Note and the Deed of Trust expressly allow Defendant to charge Plaintiffs additional fees and to increase the interest upon default. Accordingly, any such threat in this case would not have been in violation of the RFDCPA. *See id.*

Plaintiffs' argument to the contrary is not persuasive. Plaintiffs assert that the above activities were improper because Defendant had no right to foreclose or to increase the fees after receiving Plaintiffs' Rescission Notice. However, as previously noted, the receipt of the Rescission Notice did not automatically lead to rescission. *See Yamamoto*, 329 F.3d at 1172. Accordingly, the Court **GRANTS** Defendant's summary judgment as to Plaintiffs' second cause of action for violations of the RFDCPA.

**III.     Quiet title**

Plaintiffs assert that they are also entitled to summary judgment on their third cause of action, which seeks to quiet title in the Property.  Defendant, on the other hand, asserts that it is entitled to summary judgment on this cause of action because Plaintiffs have not tendered or offered to tender as required under California law.  Moreover, Defendant asserts that the quiet title action is improper because the title to Plaintiffs' property is not in dispute.

The purpose of a quiet title action is "'to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.'" *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970) (quoting *Peterson v. Gibbs*, 147 Cal. 1, 5 (1905)).  Quiet title claims are governed by Section 761.020 of the California Code of Civil Procedure, which provides that a complaint to quiet title "shall be verified," and requires it to include all of the following:: (a) a description of the property that is the subject of the action; (b) the title of the plaintiff as to which a determination is sought and the basis of the title; (c) the adverse claims to the title of the plaintiff against which a determination is sought; (d) the date as of which the determination is sought; and (e) a prayer for the determination of the title of the plaintiff against the adverse claims.

In the present case, Plaintiffs have complied with each requirement of Section 761.020.  They have (1) filed a verified complaint, (2) provided a legal and physical description of the subject property, (3) provided the basis for their title, (4) stated the adverse claim to their title, (5) indicated that they seek determination as of November 10, 2006, and (6) included a sufficient prayer for the determination of the title in their favor.  (*See* VFAC ¶¶ 42-45, ¶ 16 at p. 12.)

However, even if the above requirements are met, California courts have pronounced that in order to maintain a cause of action to quiet title, the mortgagor must allege tender or ability to tender the amounts admittedly borrowed.  *See Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974) (noting that a mortgagor cannot "quiet title without discharging his debt.  The cloud upon his title persist until the debt is paid." (citing *Burns v. Hiatt*, 149 Cal. 617, 620 (1906)); *Mix v. Sodd*, 126 Cal. App. 3d 386, 390 (1981) (noting that a mortgagor in possession may not maintain an action to quiet title without paying the debt, even if the debt is otherwise unenforceable).  In this case, as

1  previously noted, the Court believes that Plaintiffs have sufficiently alleged their ability to tender.
2  (*See* Michael Horton Decl. ¶ 10; Cathie Horton Decl. ¶ 12.)

3  Finally, the Court rejects Defendant's argument that the quiet title action is moot and
4  inapplicable because the title to Plaintiffs' property is not in dispute. Rather, the Court believes
5  that Defendant's Deed of Trust and Notice of Default place sufficient cloud on Plaintiffs' title to
6  support their quiet title action. Accordingly, Plaintiffs' quiet title action is not moot.

7  For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for summary judgment
8  on their third cause of action, which seeks to quiet title to the Property, and **DENIES** Defendant's
9  respective motion for summary judgment.

10 **IV.   UCL violations**

11  Plaintiffs and Defendant both move for summary judgment as to the fourth cause of action
12  alleging violations of California's UCL. *See* Cal. Bus. & Prof. Code § 17200 et seq. Section
13  17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice"
14  and "unfair, deceptive, untrue or misleading advertising." *Id.* § 17200. Because the statute is
15  written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts
16  or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *See Cel-Tech*
17  *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

18  Plaintiffs base their summary judgment motion on the "unlawful" prong of the UCL. An
19  act is "unlawful" under § 17200 if it violates an underlying state or federal statute or common law.
20  *See id.* As such, the success of Plaintiffs' UCL claim depends on the success of their other causes
21  of action, especially the first cause of action for TILA violations. *See id.* ("By proscribing 'any
22  unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as
23  unlawful practices' that the unfair competition law makes independently actionable." (citation
24  omitted)). The Court has already determined that Plaintiffs are entitled to rescission under count
25  one of their first cause of action. Accordingly, Plaintiffs are also entitled to summary judgment in
26  their favor under the "unlawful" prong of the UCL. *See* Cal. Bus. & Prof. Code § 17200; *Cel-*
27  *Tech*, 20 Cal. 4th at 180. As such, the Court **GRANTS** Plaintiffs' motion for summary judgment
28  on their fourth cause of action and **DENIES** Defendant's respective motion.

Plaintiffs, however, have not provided the Court with any indication of the damages to which they believe they are entitled to. Moreover, the only other causes of action they have succeeded on are rescission under TILA and the quiet title action. Accordingly, Plaintiffs failed to demonstrate that they are entitled to any damages under their UCL cause of action.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

(1) As to <u>claim one of the first cause of action</u>, seeking rescission under TILA – Plaintiffs' motion for summary judgment is **GRANTED** and Defendant's motion is **DENIED**;

(2) As to <u>claim two of the first cause of action</u>, seeking damages under TILA – Plaintiffs' motion for summary judgment is **DENIED** and Defendant's motion is **GRANTED**;

(3) As to the <u>second cause of action</u> for violations of the RFDCPA – Defendant's motion for summary judgment is **GRANTED**;

(4) As to the <u>third cause of action</u>, seeking to quiet title to the Property – Plaintiffs' motion for summary judgment is **GRANTED** and Defendant's motion is **DENIED**; and

(5) As to the <u>fourth cause of action</u> for violations of the UCL – Plaintiffs' motion for summary judgment is **GRANTED** and Defendant's motion is **DENIED**.

With respect to the rescission and the quiet title action, the Court conditions both on Plaintiffs' deposit of the funds in an escrow account. Defendant is hereby **ORDERED** to provide the Court with an accounting of the outstanding balance on the loan **within 5 days** of this Order. Plaintiffs may file any objections to the accounting **within 5 days** after that. The Court will issue an order regarding the amount to be tendered soon thereafter. Once the amount is determined, Plaintiffs shall be entitled to a rescission of their loan and to quiet title to the Property vis-a-vis Defendant California Credit Corp. Retirement Plan **provided they deposit the necessary tender amount in an escrow account**. If the parties believe any specific rules or conditions should apply as to the type of escrow account used, they should include such proposed rules or conditions in their supplemental briefing to the Court on the issue of accounting.

Although the Court concludes that Plaintiffs are entitled to summary judgment on their fourth cause of action alleging violations of the California unfair competition law, the Court finds

that Plaintiffs are **NOT** entitled to any damages on this cause of action.

The parties' motions for summary judgment are **DENIED** in all other respects.

**IT IS SO ORDERED.**

**Date: December 7, 2011**

*[signature: Irma E. Gonzalez]*

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**